UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LAWRENCE PYSCHER,

            Plaintiff,            Case No. 16-cv-14055

v.                                              Honorable Thomas L. Ludington

UNITED STATES OF AMERICA,

            Defendants.

_____/

**OPINION AND ORDER GRANTING MOTION TO DISMISS**

Plaintiff Lawrence Psycher filed a complaint against Defendant United States of America on November 15, 2016. ECF No. 1. Psycher alleges that his treating physicians at the Veterans Affairs hospital were negligent because they did not adequately investigate the possibility that Psycher might have asbestosis or another lung-related medical condition. On April 21, 2017, the Government filed a motion to dismiss. ECF No. 8. For the reasons stated below, that motion will be granted.

**I.**

At the motion to dismiss stage, all well-pleaded factual allegations are assumed to be true. In his complaint, Psycher alleges that he has been "a patient at the Aleda E. Lutz VA Medical Center in Saginaw Michigan for years." Compl. at 2, ECF No. 1. The sequence of events which gives rise to the current action began on February 25, 2014. *Id.* On that day, Psycher traveled to Flint, Michigan, to have his lungs x-rayed for potential asbestosis. *Id.* The x-ray results were reviewed by Steven E. Haber, a "NIOSH Certified B reader." *Id.* Psycher

explains that a "NIOSH Certified B reader is a doctor who has undergone rigorous training to recognize asbestosis, black lung, mesthemeola [sic] and other lung affected diseases." *Id.* at 3.

Dr. Haber sent his report to Psycher on April 9, 2015. *See* Haber Rep., ECF No. 1, Ex. B. Dr. Haber first explains that the "x-ray is of film quality 2 due to improper positioning and poor processing." *Id.* at 1. Dr. Haber's opinion, in full, is as follows: "There are pleural and parenchymal abnormalities present which would represent asbestosis and asbestos-related pleural disease, assuming an adequate exposure history, sufficient latency, and exclusion of other more probable causes. No diagnosis is made or implied. Clinical correlation is recommended." *Id.* at 2.

Alarmed by this report, Psycher scheduled an appointment with his local doctor, Thomas Hadad. Compl. at 3. At the appointment, a second set of x-rays were taken. *Id.* Doctor Ross Waterford reviewed the second set of x-rays and "declared that there was no problems or asbestosis found in the second set of x-rays." *Id.* Dr. Waterford is not a NISOH Certified B reader. *Id.*

On June 10, 2015, Psycher had an appointment with his primary care physician, Dr. Potts. *Id.* At the appointment, Psycher "asked for the results of the x-rays and explained that he had a set that had been read by a Certified B-reader that stated he had asbestosis." *Id.* Dr. Potts indicated that he was unaware of those x-rays. *Id.* Psycher attempted to explain that he had a second set of x-rays taken and "wanted to know if they would be read by a Certified B reader." *Id.* At that point, Dr. Potts "jumped to his feet and stared [sic] yelling at the Plaintiff and his wife and ordered them out of his office." *Id.* According to Psycher, the appointment was less than four minutes long. *Id.* at 4.

On June 15, 2015, Psycher wrote to Dr. Blasy, the Chief of Staff for the Saginaw VA Medical Center. *Id.* He wrote to "try to get the results of his x-ray and to clear up the confusion

surrounding his diagnosis." *Id.* Dr. Blasy did not respond, but Pyscher received a copy of his medical files on July 21, 2015. *Id.* Those records revealed that, according to Dr. Potts, a Certified B-reader had read Psycher's x-rays and concluded that he did not have asbestosis. *Id.* Psycher complains that he "still has no definitive answer as to the needed treatment for his lungs and whether he actually has a lung disease or not." *Id.* He further objects that "[e]ven though it has been over 18 months, and despite repeated request, the Defendant has failed to provide this veteran with the medical care and diagnosis that he may need to fight whatever lung disease he may have." *Id.*

Count II of Pyscher's complaint (there is no "Count I") alleges "Negligence or Malpractice of Physician and Defendant US." *Id.* at 5. He alleges that Defendant owed him a duty of reasonable care and diligence similar to that of other doctors in general medicine, "measured against a national standard." *Id.* He contends that Defendant breached its duties to him because Dr. Potts failed to "timely order x-rays to follow up after being informed of the first diagnosis," failed to understand the importance of having a Certified B-reader review the x-rays, "negligently dismissed" Pyscher when he inquired about the x-rays, and "caused additional stress to the already sick Plaintiff." *Id.*

Psycher attaches two exhibits to his complaint. Exhibit A is a letter from the Department of Veterans Affairs confirming that Psycher's medical negligence claim was investigated and found to be meritless. VA Letter, ECF No. 1, Ex. A. Exhibit B is Dr. Haber's report (summarized above). Exhibit C is the letter Pyscher wrote to Dr. Blasy. Letter to Blasy, ECF No. 1, Ex. C.

## II.

Defendant is moving for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). A pleading fails to state a claim under Rule 12(b)(6) if it does not contain allegations that support

recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted).

### III.

The Government argues that Pyscher's suit should be dismissed for two reasons. First, Pyscher does not allege that he has suffered actual injury as a result of the Government's actions. Second, Pyscher did not attach an affidavit of merit by a qualified expert, as required by Michigan law. After resolving the threshold issue of whether the motion to dismiss should be converted into a motion for summary judgment, the Government's two arguments will be addressed in turn.

### A.

In his response to the Government's motion to dismiss, Pyscher "requests the court's consideration of additional evidence presented as exhibits to this motion and discussed herein." Pl. Resp. Br. at 4. Because the Government has not had a meaningful opportunity to present evidence of its own, the motion will not be converted to a motion for summary judgment.

A court faced with a Rule 12(b)(6) motion must typically limit its consideration to the pleadings or convert it to a motion for summary judgment under Federal Rule of Civil Procedure 12(d). *Tackett v. M & G Polymers, USA, L.L.C.*, 561 F.3d 478, 487 (6th Cir.2009). Conversion to a motion for summary judgment, however, "'should be exercised with great caution and attention to the parties' procedural rights.'" *Id.* (quoting 5C Charles Alan Wright & Arthur R. Miller § 1366). A court has discretion regarding whether to convert a motion to dismiss to a motion for summary judgment. *Jones v. City of Cincinnati*, 521 F.3d 555, 561–62 (6th Cir. 2008). The Sixth Circuit has held that "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997).

Psycher attached several exhibits to his complaint (summarized above). Because they were attached to the complaint and referred to within, they will be considered. Pyscher has also attached five exhibits to his response brief opposing the motion to dismiss. But, because Pyscher attached additional evidence to his response brief, the Government's only chance to respond with evidence of its own was in the reply brief. Local Rules limit the length of the reply brief to seven pages, meaning that the Government was unable to meaningfully address the factual basis for its arguments within the reply brief. In other words, the Government did not have a "reasonable opportunity to present all material" that would be relevant to a motion for summary judgment. *Briggs v. Ohio Elections Comm'n*, 61 F.3d 487, 493 (6th Cir. 1995). For that reason, the motion to dismiss will not be transformed into a motion for summary judgment.[1]

---

[1] It must further be noted that, even if the exhibits attached to the response brief were considered, they would be insufficient to justify denial of Defendant's motion. At best, the exhibits establish that Pyscher suffers from PTSD, that a Dr. Nelson has reviewed his x-rays and found no asbestosis, and that Pyscher has suffered emotional distress as a result of the uncertainty regarding whether he has asbestosis. In other words, even the newly attached exhibits do not contain an affirmative diagnosis that Pyscher actually has asbestosis, much less an affidavit of merit. As discussed below, both are required for this case to avoid dismissal.

**B.**

The Government first argues that Pyscher's suit should be dismissed because he has not alleged an actionable injury. Psycher is bringing suit pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq.* In general, "sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). The FTCA operates as a limited waiver of that sovereign immunity.

The FTCA states that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674. This provision has been held to mean that liability of the federal government is determined by the law of the State in which the incident in question occurred. See *Young v. United States*, 71 F.3d 1238, 1242 (6th Cir. 1995). Accordingly, Michigan law applies to Pyscher's claim for "Negligence or Malpractice of Physician." Compl. at 5.

The parties dispute whether Pyscher's claim is for medical (professional) malpractice or simple negligence. If Pyscher has alleged medical malpractice, he bears the burden of proving: "(1) the applicable standard of care, (2) breach of that standard by defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury. Failure to prove any one of these elements is fatal." *Cox ex rel. Cox v. Bd. of Hosp. Managers for City of Flint*, 651 N.W.2d 356, 361 (Mich. 2002) (quotation and citation omitted). If the defendant practitioner is a specialist, then the plaintiff bears the burden of proving that the defendant "failed to provide the recognized standard of practice or care within that specialty as reasonably applied in light of the facilities available in the community or other facilities reasonably available under the circumstances, and as a proximate result of the defendant failing to provide that standard, the plaintiff suffered an

injury." Mich. Comp. Laws § 600.2912a(1)(b). "As a general rule, Michigan courts require expert testimony in medical-malpractice cases, particularly for establishing the applicable standard of care and causation." *Kava v. Peters*, 450 F. App'x 470, 475 (6th Cir. 2011).

If the claim is construed as one for simple negligence, as Psycher contends, then the standard is similar: "[I]n order to state a negligence claim on which relief may be granted, plaintiffs must prove (1) that defendant owed them a duty of care, (2) that defendant breached that duty, (3) that plaintiffs were injured, and (4) that defendant's breach caused plaintiffs' injuries." *Henry v. Dow Chem. Co.*, 473 Mich. 63, 71–72 (2005). Importantly, "Michigan law requires more than a merely speculative injury." *Id.* at 72. In fact, the Michigan Supreme Court has squarely rejected "the proposition that mere exposure to a toxic substance and the increased risk of future harm constitutes an "injury" for tort purposes. It is a present injury, not fear of an injury in the future, that gives rise to a cause of action under negligence theory." *Id.* at 72–73 (citing *Larson v. Johns-Manville Sales Corp.*, 427 Mich. 301, 319, 399 N.W.2d 1, 9 (1986)).

Pyscher admits that he has not been diagnosed with any medical condition. *See* Pl. Resp. Br. at 7 ("The damages he has suffered from this inaction on [Defendant's] part [is] unknown. But it may well have resulted in exacerbation of an existing condition of lost opportunity for treatment."). *See also id.* at 9 ("Defendant has incorrectly stated that Plaintiff's damages stem from a claim concerning Mesothelioma, which the Plaintiff has not yet been definitively diagnosed with."). Rather, Pyscher contends that the claim in his complaint is based on the "emotional distress caused by his increased anxiety and aggravation of his PTSD based upon the actions of Defendant in denying him his medical records connected with Plaintiff's Mesothelioma assessments." *Id.* But the complaint does not allege a claim for intentional infliction of emotional distress and Pyscher does not now contend that it should be construed as

advancing that claim. Rather, he contends that he has "stated a claim for *negligence* based on Defendants' failures, and refusals, to act as described herein." *Id.* (emphasis added).

This argument has no merit. The requirement of showing an actual injury is common to both simple negligence and medical malpractice claims. *Henry*, 473 Mich. at 71–72. Pyscher contends that Defendant's actions have created emotional distress for him. But Michigan law requires him to allege that "the mental disturbance or shock negligently inflicted by the defendant has 'resulted in actual physical harm.'" *Hayes v. Langford*, No. 280049, 2008 WL 5158896, at *3 (Mich. Ct. App. Dec. 9, 2008) (quoting *Taylor v. Kurapati*, 236 Mich. App. 315, 360, 600 N.W.2d 670 (1999)).[2]

Pyscher also attempts to argue that he "has a potential claim against the VA for failing (and refusing) to treat a known medical condition." Pl. Resp. Br. at 11. But he has not alleged that he actually has a medical condition, merely that the VA did not adequately investigate the possibility. And, in fact, the exhibits that he attaches to the complaint demonstrate that all formal diagnoses of Pyscher's lungs indicate that he does not suffer from a condition. Thus, Pyscher has not stated a claim upon relief can be based regardless of whether his complaint is construed as advancing a claim for ordinary negligence or for medical malpractice.[3]

Pyscher also argues that he has alleged a claim against Defendant for failing to turn over his medical records. But that argument is unmoored from any legal authority and is contradicted by Pyscher's own allegations. Pyscher has presented no authority which suggests that a simple negligence claim can be advanced for failure to provide medical records. And even if such a

---

[2] It must further be noted that the Complaint does not attempt to allege a claim for negligent infliction of emotional distress. And, even if it did, such a claim could not be advanced because Michigan courts have limited that claim to situations where the plaintiff has witnessed negligent injury to a third person and suffered mental disturbance as a result. *Id.* at *4.

[3] Pyscher's claims could reasonably be construed as a claim for medical malpractice, considering that the gravamen of his allegations is that the VA hospital breached the "accepted method of practice and duties" of "doctors in general medicine, measured against a national standard. Compl. at 5. For that reason, Pyscher's complaint is also deficient for failure to include an affidavit of merit, which is required by Michigan law. *See* M.C.L. § 600.2912d.

claim was cognizable, Pyscher has not alleged that he suffered a physical injury as a result of the failure. To the extent Pyscher might be able to reply upon other legal authority (like the Freedom of Information Act or the Health Insurance Portability and Accountability Act of 1996), he has not alleged such a claim in his complaint nor alleged that he has exhausted any administrative remedies he might have. And more importantly, Pyscher alleges *in his complaint* that he received a copy of his medical files on July 6, 2015. Compl. at 4. Pyscher has not identified which, if any, medical records have been withheld from him. And he has not established a legal right to those records.

## C.

Psycher requests that, if the Court concludes that his complaint is deficient, that he be given an opportunity to amend. Because the failings in Pyscher's complaint could conceivably be cured through additional and more complete drafting, dismissal without prejudice might be appropriate. But Defendant also argues that Pyscher's claims are barred by the statute of limitations. If true, then any attempt at refiling would be futile, and the case should be dismissed with prejudice.

Pyscher argues that the statute of limitations for ordinary negligence claims under Michigan law is three years. But Pyscher is bringing suit via the FTCA. And, as Defendant asserts, the FTCA provides its own statute of limitations. Pursuant to 28 U.S.C. § 2401: "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." Pyscher's administrative tort claim was denied by the Department of Veterans Affairs on May 16, 2016. *See* VA Letter, ECF No. 1,

Ex. A. Thus, the six month time limit ended on November 16, 2016. And "the filing of a complaint which is later dismissed without prejudice for failure to perfect service does not toll the statute of limitations." *Wilson v. Grumman Ohio Corp.*, 815 F.2d 26, 28 (6th Cir. 1987). That is because without without prejudice "'operate to leave the parties as if no action had ever been commenced.'" *Id.* (quoting *Harris v. City of Canton, Ohio*, 725 F.2d 371, 376-77 (6th Cir.1984)).

More than six months have passed since Pyscher's administrative tort claim was denied. As such, any action he filed now would be untimely pursuant to § 2401. Pyscher's case will be dismissed with prejudice.

**IV.**

Accordingly, it is **ORDERED** that Defendant United States of America's motion to dismiss, ECF No. 8, is **GRANTED.**

It is further **ORDERED** that Plaintiff Pyscher's complaint, ECF No. 1, is **DISMISSED with prejudice.**

Dated: July 7, 2017                                s/Thomas L. Ludington
                                                   THOMAS L. LUDINGTON
                                                   United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 7, 2017.

                                    s/Kelly Winslow
                                    KELLY WINSLOW, Case Manager